**In re Application for the Discipline of Robert F. DeVINNY, an Attorney at Law of the State of Minnesota.**

**No. 47657.**

Supreme Court of Minnesota.

June 17, 1977.

R. Walter Bachman, Jr., Administrative Director on Professional Conduct, St. Paul, for petitioner.

A. M. Sandy Keith, Rochester, for respondent.

Robert F. DeVinny, pro se.

Considered and decided by the court without oral argument.

PER CURIAM.

These proceedings are brought to the Court on the petition for the discipline of Robert F. DeVinny, an attorney at law, for participating in activities constituting the unauthorized practice of law by a collection agency. The attorney has stipulated to the facts and presented for the Court's consideration mitigating circumstances.

Mr. DeVinny was admitted to practice in this state on May 24, 1963, and is a member in good standing of the bar. The improprieties which gave rise to these proceedings occurred from 1966 to 1972, during which time the attorney represented Rochester Collections, Inc., of Rochester, Minnesota.

A violation of DR 1–102(A)(4), Code of Professional Responsibility is not disputed:

"(A) lawyer shall not:

\*     \*     \*     \*     \*     \*

"(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."

The facts giving rise to the violation of this disciplinary rule are set forth in the Administrative Director's petition as follows:

"(a) Respondent permitted his name, address, and status as an attorney to be listed at 3½ Broadway, Rochester, Minnesota, on certain documents and letterhead, when in fact Respondent maintained no office or desk at that address, and when Respondent knew that all persons and employees at that address were employees of Rochester Collections, Inc.

"(b) That certain correspondence relating to the actual commencement and processing of collection matters in litigation was drafted in Respondent's name, and Respondent's name was signed on letters by employees of Rochester Collections, Inc., and said letters were sent to debtors and others when such letters were in fact drafted by employees of Rochester Collections, Inc., and may not have been seen or approved by Respondent in advance of being sent to said debtors.

"(c) That a special checking account was maintained in Respondent's name for purposes of paying sheriffs' service fees, which account was maintained at First National Bank of Rochester, Rochester, Minnesota. That the funds deposited in said special account were, in fact, the funds of Rochester Collections, Inc., and said funds could be withdrawn from said special account only by authorized employees of Rochester Collections, Inc.

"(d) That a certain telephone number was placed on pleadings and other documents, as well as correspondence, as a number at which Respondent could be contacted, when, in fact, said number was an unlisted number for Rochester Collections, Inc., and Respondent knew that said telephone number was answered only by employees of Rochester Collections, Inc., who were not under the direct supervision and control of Respondent."

A violation of DR 3–101(A) is also undisputed:

"A lawyer shall not aid a non-lawyer in the unauthorized practice of law."

The facts giving rise to that violation are also set forth in Administrative Director's petition as follows:

"(a) Respondent signed blank printed legal forms, including summons and complaints, garnishment summons, and releases, and turned said blank forms over to the President of Rochester Collections, Inc. or his agent. That Respondent knew that employees of Rochester Collections, Inc. were utilizing said pre-signed forms. That although Respondent had arranged for consultation by telephone or in person before use of any such pre-signed forms, Respondent now realizes that some pre-

signed forms were prepared and distributed without his knowledge or consent.

"(b) That certain correspondence to debtors, attorneys, and other persons, was written by employees of Rochester Collections, Inc., on Respondent's letterhead and the name of Respondent signed thereon by employees of Rochester Collections, Inc. That said letters purported to express the statements of an attorney, when, in fact, such was not the case.

"(c) That Respondent's name was repeatedly signed on letters to debtors and other attorneys in the litigation process, which letters attempted settlement negotiations which were not authorized by Respondent, but upon which Respondent's name was used to effect collections on certain debtors' accounts.

"(d) That employees of Rochester Collections, Inc., with Respondent's knowledge, answered a telephone number purporting to be Respondent's number, and that persons calling said telephone number would unknowingly speak with lay employees of Rochester Collections, Inc. That said employees discussed litigation and made demands for payment or settlement, or, on occasion, referred some matters to Respondent."

By way of mitigating circumstances it appears that this attorney has been guilty of no other improprieties during the time he has been in practice and discontinued his relationship with Rochester Collections, Inc., in December 1972. His misconduct has resulted in no financial loss to either his client or to any of the creditors or debtors associated with the collection agency. He enjoys a good reputation in the community and has been active in its civic affairs. The attorney recognizes the impropriety of his activities and attributes these violations to the fact he was an individual practitioner who lacked experience.

For an attorney to lend his name to a collection agency, without personally authorizing or supervising the procedures and processes which are pursued in his name, is a wilful misrepresentation of his professional status and a grossly improper participation in the unauthorized practice of law for which he is subjected to severe public censure by this Court. Under other circumstances these violations might be grounds for suspension or disbarment. However, in view of the attorney's otherwise unblemished record, his recognition of the improprieties, and his cooperation with the Lawyers Professional Responsibility Board in acknowledging these violations, we deem public censure to be an appropriate sanction. It is so ordered.