In the Matter of the Application for the DISCIPLINE OF Lewis S. BERNSTEIN, an Attorney at Law of the State of Minnesota.

No. C1–86–716

Supreme Court of Minnesota.

May 8, 1987.

William J. Wernz, Director of the Office of Prof. Respc., St. Paul, for appellant.

Theodore Collins, St. Paul, for respondent.

PER CURIAM.

This matter comes to us for discipline based on a referee's findings of misappropriation, attempted fraud, unauthorized endorsement of a check, misrepresentation to a client's insurer, perjury, fabrication of documentary evidence, trust account improprieties, and false certification to this court. The referee found no mitigating circumstances, one aggravating circumstance, and recommended 18 months' suspension. We adopt the referee's findings but in light of the seriousness of respondent's misconduct require that he be suspended for 4 years.

The facts, as found by the referee, are deemed conclusive because neither party ordered a transcript of the hearing before the referee. Minn.R.Law.Prof.Resp. 14(d) (1987). The referee found that in December 1985 respondent Lewis S. Bernstein negotiated a $2,500 personal injury settlement for his client. The insurance company sent Bernstein a check for $2,500 and a release mistakenly reflecting a $2,000 settlement. From December 17, 1985, through February 11, 1986, Bernstein attempted to defraud his client of $325 of his net settlement proceeds. In a series of letters and phone calls, Bernstein repeatedly lied to his client, telling him the settlement was for $2,000, and attempted to intimidate him into signing the $2,000 release. On December 21, 1985, Bernstein forged his client's name on the settlement check, deposited the check in his trust account, and then issued himself a check for $1,100, $325 in excess of the attorney fees to which he was entitled. With rare exceptions, from December 24, 1985, to February 17, 1986, Bernstein did not have the appropriate amount in his trust account. After the client contacted the insurance company in February 1986 and learned of the actual settlement amount, Bernstein paid the client the money due. The client complained against respondent to the Office of Lawyers Professional Responsibility.

The director's petition alleged four counts of misconduct related to the attempted fraud and one count alleging failure to maintain proper trust account records and false certification to this court. A supplementary petition alleging perjury and fabrication of evidence in the disciplinary proceedings was filed after the referee's hearing. Bernstein's verified answer to the original petition included many falsehoods. In addition, at his deposition and during the hearing before the referee, Bernstein repeatedly lied under oath and he fabricated a bank deposit slip which was introduced into evidence. After a bank employee's testimony exposed the falsified deposit slip, Bernstein testified truthfully

that he had fabricated the evidence and lied under oath.

As appropriate discipline, the director recommends respondent be disbarred. The referee recommends 18 months' suspension. We place great weight on the referee's recommendations but retain final responsibility for determining the appropriate discipline. *In re Fling*, 316 N.W.2d 556, 559 (Minn.1982).

The director argues that the present case is similar to *In re Parks*, 396 N.W.2d 560 (Minn.1986). Parks had been privately reprimanded twice and was on 2–year probation for a third ethics violation when he misappropriated for his own use $4,800 of a $6,000 settlement. Parks lied to the client for 3 years regarding the whereabouts of the funds. He also initially lied to the director to cover up his misconduct, but finally told the truth when the director produced irrefutable evidence of Park's wrongdoing. Although Parks did not commit perjury or fabricate evidence, his deceit covered a longer period of time than in this case and involved a larger sum of money. Significant, too, is that Parks had an extensive history of ethics violations and was on probation at the time of the misappropriation. Bernstein has no prior history of violations. We recently stated:

> This court orders disbarment, however, only when there is a continuing pattern of gross neglect of clients, misrepresentations to court and other patterns of misconduct which constitute a great danger from which the public needs immediate protection.

*In re Carey*, 380 N.W.2d 806, 809 (Minn. 1986).

We cannot ignore that the totality of respondent's misconduct in this case is most serious and warrants, at the least, a long suspension. *See In re Ray*, 368 N.W.2d 924 (Minn.1985) (3 years' suspension); *In re Daffer*, 344 N.W.2d 382 (Minn. 1984) (5 years' suspension). Respondent intended to convert permanently the funds to his own use and, when the client's suspicions were aroused, engaged in an elaborate coverup of deceit. On the other hand, the case involves an isolated instance of misappropriation of a relatively small sum of money, for a short period of time, followed by full restitution. Respondent is contrite, and, as the referee observed, aside from the matter involved in these proceedings, he has shown himself to be a person of good character, with the capacity and resolve not to repeat this sordid episode of his professional career. Respondent does not appear to pose a permanent danger to the public.[1]

We order, therefore, that respondent shall be forthwith indefinitely suspended from the practice of law with the right to apply for readmission on or after 4 years from this date.

---

1. As illustrative disbarment cases, *see In re Selb*, 395 N.W.2d 81 (Minn.1986) (attorney misappropriated funds from two clients (in one case $26,000), forged a client's signature on a check, made false statements to the board, disobeyed orders of the probate court, and seriously neglected other clients' matters); *In re Moberly*, 319 N.W.2d 720 (Minn.1982) (attorney misappropriated $4,350 in various clients' funds over a 1–year period, wrote 25 checks on accounts he knew were closed, and refused to make restitution); *In re Okerman*, 310 N.W.2d 568 (Minn. 1981) (extensive misconduct including but not limited to transferring over $100,000 from a conservatorship to a real estate business the attorney had invested in, executing false promissory notes to hide the transfer, misappropriating over $100,000 in capital contributions made by fellow partners in a business, check-kiting to conceal shortages of funds, client neglect, etc.); *In re Wackerbarth*, 287 N.W.2d 651 (Minn.1979) (converted $30,000 to his own use, neglected clients' affairs, failed to file personal income tax); *In re Primus*, 283 N.W.2d 519 (Minn.1979) (made false statements to creditors and the probate court, failed to keep proper books and records, and misappropriated substantial funds from several clients).