In re Petition for DISCIPLINARY AC-
TION AGAINST Joseph D. O'BRIEN,
Jr., a Minnesota Attorney, Registra-
tion No. 184810.

No. A10–1467.

Supreme Court of Minnesota.

Jan. 25, 2012.

Martin A. Cole, Director, Patrick R.
Burns, First Assistant Director, Office of
Lawyers Professional Responsibility, St.
Paul, MN, for petitioner.

Joseph D. O'Brien, Jr., Minneapolis, MN, pro se.

## OPINION

PER CURIAM.

The Director of the Office of Lawyers Professional Responsibility ("Director") filed a petition for disciplinary action against respondent Joseph D. O'Brien, Jr., alleging that O'Brien neglected two client matters, failed to keep his client reasonably informed about those matters, did not return his client's files, and failed to cooperate in the disciplinary investigation. O'Brien filed an answer to the Director's petition, but the referee struck O'Brien's answer as a sanction for his failure to timely comply with the referee's discovery order. The referee deemed admitted the allegations of the petition, found that O'Brien's actions constituted misconduct, and recommended that we indefinitely suspend O'Brien from the practice of law for a minimum of 90 days. We agree with the referee's recommendation and indefinitely suspend O'Brien for a minimum of 90 days.

O'Brien was admitted to practice law in Minnesota in October 1987, and he has not been the subject of any prior discipline by this court. The misconduct in this case arose out of O'Brien's representation of D.M. beginning in December 2009. O'Brien agreed to represent D.M. in two matters: (1) the appeal of a harassment restraining order to the Minnesota Court of Appeals; and (2) the appeal of a conciliation court judgment to the district court. With respect to the first matter, O'Brien filed a notice of appeal, a statement of the case, and a response to jurisdictional questions raised by the court of appeals. However, O'Brien failed to file a brief on the merits, despite the issuance of an order by

the court of appeals advising him that his brief was overdue and ordering him to file a brief within 12 calendar days. O'Brien did not meet either deadline imposed by the court of appeals, which resulted in the dismissal of D.M.'s appeal. O'Brien failed to inform D.M. that he had missed the filing deadlines or that the court of appeals had dismissed the appeal.

With respect to the conciliation court matter, O'Brien failed to conduct any of the discovery requested by D.M. During O'Brien's representation, D.M. frequently tried to contact O'Brien to discuss the status of the conciliation court matter and the progress of discovery, but D.M. was only occasionally successful in speaking with O'Brien. When they did meet on one occasion, O'Brien assured D.M. that the conciliation court matter was in good order, and that O'Brien would complete the discovery in that matter in a timely fashion. However, O'Brien never conducted the requested discovery.

After D.M.'s conversation with O'Brien, D.M. made several requests for O'Brien to return D.M.'s client files. O'Brien told the Director's office that he had unsuccessfully attempted to courier the files to D.M., and then later attempted delivery of the files by mail, but O'Brien failed to respond to the Director's request for documentation of either of those delivery attempts. Following several emails and letters to O'Brien by the Director and D.M. inquiring about the return of the files, O'Brien left what appeared to be only a portion of the files in D.M.'s car, approximately 2 months after D.M. had first requested his client files from O'Brien.

D.M. submitted a complaint against O'Brien to the Director's office on May 4, 2010. On May 12, 2010, the Director mailed O'Brien a notice of investigation requesting a written response within 14 days. O'Brien, however, failed to respond

by the deadline. On July 15, 2010, the Director served O'Brien with charges of unprofessional conduct, but O'Brien again failed to respond or submit an answer to the charges in a timely fashion. The Director thereafter filed a petition for disciplinary action with this court on August 24, 2010.

O'Brien answered the Director's petition on September 17, 2010, and we referred the matter to a referee for hearing. The referee issued a scheduling order on January 13, 2011, instructing the parties to serve witness and exhibit lists no later than February 9, 2011. On February 1, 2011, the referee issued a second order, directing O'Brien to respond to certain discovery requests no later than February 7, 2011, and warning him that failure to comply with the order would result in the striking of his answer. O'Brien did not timely deliver his discovery responses. Nor did he serve the witness and exhibit lists within the deadline imposed by the referee's January 13 scheduling order. Following an unsuccessful attempt to reach a stipulated disposition, the Director moved to strike O'Brien's answer to the petition based in part on O'Brien's failure to comply with the February 1 discovery order. The referee granted the Director's motion, struck O'Brien's answer, and deemed admitted the allegations of the petition.

The referee adopted the admitted allegations into his findings of fact, and then concluded that O'Brien's conduct violated Minn. R. Prof. Conduct 1.1,[1] 1.3,[2] 1.4,[3] 1.15(c)(4),[4] 1.16(d),[5] 3.2,[6] and 8.1(b),[7] and Rule 25, Rules on Lawyers Professional Responsibility (RLPR).[8] The referee further found that O'Brien's bad faith throughout the disciplinary proceedings— evidenced by O'Brien's failure to respond to the Director, failure to comply with the referee's orders, and frivolous objections to the proposed stipulation for discipline— constituted an aggravating factor. The referee found no mitigating factors. The referee recommended that we indefinitely suspend O'Brien from the practice of law

1. "A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation." Minn. R. Prof. Conduct 1.1.

2. "A lawyer shall act with reasonable diligence and promptness in representing a client." Minn. R. Prof. Conduct 1.3.

3. "A lawyer shall ... (3) keep the client reasonably informed about the status of the matter [and] (4) promptly comply with reasonable requests for information...." Minn. R. Prof. Conduct 1.4.

4. "A lawyer shall ... promptly pay or deliver to the client or third person as requested the funds, securities, or other properties in the possession of the lawyer which the client or third person is entitled to receive...." Minn. R. Prof. Conduct 1.15(c)(4).

5. "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as ... surrendering papers and property to which the client is entitled...." Minn. R. Prof. Conduct 1.16(d).

6. "A lawyer shall make reasonable efforts to expedite litigation consistent with the interests of the client." Minn. R. Prof. Conduct 3.2.

7. "[A] lawyer in connection ... with a disciplinary matter, shall not ... knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority...." Minn. R. Prof. Conduct 8.1(b).

8. "It shall be the duty of any lawyer who is the subject of an investigation or proceeding under these Rules to cooperate with the District Committee, the Director, or the Director's staff, the Board, or a Panel, by complying with reasonable requests...." Rule 25, RLPR.

for a minimum of 90 days. The Director argues that the recommended discipline is appropriate.

## I.

■ O'Brien has not submitted a brief to this court. Although we ordinarily review the findings of fact and conclusions of a referee for clear error, we held in *In re Garcia* that the "failure to file a brief is a failure to challenge the findings or conclusions [of the referee] and leaves us with no basis upon which to conclude the findings or conclusions are clearly erroneous." 792 N.W.2d 434, 442 (Minn.2010) (citing *In re Graham,* 609 N.W.2d 894, 896 (Minn. 2000)). Because Garcia had failed to present any argument challenging the findings of fact and conclusions of law adopted by the referee, and because nothing else in the record suggested that the findings or conclusions were clearly erroneous, we concluded that the findings and conclusions in that case "must be upheld." *Id.*

The rule from *Garcia* applies here. After receiving the referee's findings of fact, conclusions of law, and recommendation for discipline, we issued a briefing schedule directing O'Brien to file a brief within 30 days. O'Brien failed to meet the briefing deadline set by this court. O'Brien thus provides us with "no basis upon which to conclude [that] the findings and conclusions [of the referee] are clearly erroneous." *Garcia,* 792 N.W.2d at 442. In addition, as in *Garcia,* there is nothing in

the record to suggest the referee committed clear error in his findings of fact or his conclusion that O'Brien's actions violated Minn. R. Prof. Conduct 1.1, 1.3, 1.4, 1.15(c)(4), 1.16(d), 3.2, and 8.1(b), and Rule 25, RLPR.[9] Accordingly, we uphold the findings and conclusions of the referee.

## II.

■ We now turn to the appropriate sanction for O'Brien's misconduct. The referee recommended indefinite suspension for a minimum of 90 days. We give "significant weight" to the recommendation of the referee, but we are the "sole arbiter of the discipline to be imposed." *In re Albrecht,* 779 N.W.2d 530, 540 (Minn. 2010) (citation omitted) (internal quotation marks omitted). We impose attorney discipline not to punish the attorney, but rather to protect the public, protect the judicial system, and deter future misconduct by the disciplined attorney and others. *Id.* In determining the appropriate discipline, we consider four factors: "1) the nature of the misconduct, 2) the cumulative weight of the violations of the rules of professional conduct, 3) the harm to the public, and 4) the harm to the legal profession." *Id.* (citation omitted) (internal quotation marks omitted). We also consider any aggravating and mitigating circumstances, and examine similar cases in an effort to impose consistent discipline. *See In re Fairbairn,* 802 N.W.2d 734, 742 (Minn.2011).

9. The referee relied on O'Brien's acts of noncooperation during the disciplinary investigation by the Director as *both* a basis for upholding the charges of attorney misconduct under Minn. R. Prof. Conduct 8.1(b) and Rule 25, RLPR, and as evidence of "bad faith" aggravating O'Brien's misconduct. We caution referees not to rely on the *same* acts of noncooperation to support both a finding of attorney misconduct and the existence of an aggravating factor. Nonetheless, we cannot say that the referee's overall finding of bad faith was clearly erroneous because the referee supported its finding by other, independent evidence, including O'Brien's failure to comply with the referee's orders and O'Brien's frivolous and tardy objections to the stipulated disposition reached by the parties. *See In re Albrecht,* 779 N.W.2d 530, 535 (Minn. 2010) ("Where the referee's findings are supported by the record they will be upheld." (quoting *In re Erickson,* 653 N.W.2d 184, 189 (Minn.2002)) (internal quotation marks omitted)).

The nature of O'Brien's misconduct is serious. O'Brien did not file a brief on his client's behalf, failed to conduct discovery as promised, did not keep his client reasonably informed, and failed to timely return client files. O'Brien then failed to cooperate with the Director's disciplinary investigation. We have consistently stated that client neglect and noncooperation constitute serious misconduct, and either, standing alone, could warrant suspension. *See, e.g., In re Cutting,* 671 N.W.2d 173, 174 (Minn.2003) (describing neglect as "serious professional misconduct" for which an indefinite suspension is typically imposed); *In re Erickson,* 653 N.W.2d 184, 191 (Minn.2002) ("[N]oncooperation with a disciplinary investigation is a serious offense which may warrant suspension.").

Considered cumulatively, O'Brien's misconduct in this case warrants suspension. When an attorney neglects client matters, fails to communicate with clients, and does not cooperate with disciplinary authorities, we have ordinarily imposed an indefinite suspension. *See In re Campbell,* 603 N.W.2d 128, 132–33 (Minn.1999) (collecting cases). In fact, we have imposed an indefinite suspension in two cases involving facts similar to those present here. *See In re Crandall,* 699 N.W.2d 769, 772 (Minn. 2005) (imposing an indefinite suspension for a minimum of 3 months when an attorney neglected three client matters, failed to communicate with his clients, and did not fully cooperate with the Director's investigation); *In re Ek,* 643 N.W.2d 611, 615 (Minn.2002) (imposing an indefinite suspension when an attorney neglected two appeals, failed to communicate with clients, and did not cooperate with the disciplinary investigation).

Moreover, client neglect and noncooperation harm the legal profession and the public. As we have noted, client neglect "generally 'undermines public confidence in the legal profession, which harms the public, the legal profession and the justice system.' " *Albrecht,* 779 N.W.2d at 542 (quoting *In re Keate,* 488 N.W.2d 229, 235 (Minn.1992)). In addition, even though D.M. has apparently not suffered any long-standing, direct harm from O'Brien's misconduct, client neglect can be "intensely frustrating" to a client. *In re Redburn,* 746 N.W.2d 330, 338 (Minn.2008) (citations omitted) (internal quotation marks omitted). Similarly, failure to cooperate with the Director's investigation "undermines the integrity of the lawyer disciplinary system." *In re Letourneau,* 792 N.W.2d 444, 453 (Minn.2011) (citations omitted) (internal quotation marks omitted).

Therefore, consistent with our prior decisions and the specific circumstances of this case, we conclude that indefinite suspension is the appropriate discipline in light of O'Brien's misconduct. Having considered the nature of the misconduct in this case, the aggravating factor of O'Brien's bad faith during the disciplinary proceedings, and the purposes of attorney discipline, we hold that the appropriate sanction for O'Brien's misconduct is an indefinite suspension for a minimum of 90 days.

Accordingly, we order that:

1. Respondent Joseph D. O'Brien, Jr., is indefinitely suspended from the practice of law, effective 14 days after the filing of this opinion, and he shall be ineligible to petition for reinstatement for a minimum of 90 days from the effective date of the suspension.

2. O'Brien shall comply with the requirements of Rule 26, RLPR (requiring notice of suspension to clients, opposing counsel, and tribunals).

3. If O'Brien seeks reinstatement, he must comply with the requirements of Rule 18(a)-(c), RLPR. Prior to reinstatement, O'Brien must also comply with the terms of our January 3, 2011, administrative suspension of his license.

4. O'Brien shall pay $900 in costs, plus disbursements, pursuant to Rule 24, RLPR.

So ordered.